PER CURIAM:
Claimant brought this action for damage to his 1999 Ford Escort ZX2 which *6 occurred when his daughter Leah Chapman was operating the vehicle on U.S. Route 52 in Mingo County. Ms. Chapman came upon a large mudslide in the road, causing her vehicle to slide into the hillside. Respondent was responsible at all times herein for the maintenance of U.S. Route 52. The Court is of the opinion to deny this claim for the reasons set forth more fully below.
The incident giving rise to this claim occurred on May 7,2002, at approximately 10:00 p.m. Claimant’s daughter, Leah Chapman, was driving claimant’s vehicle northbound on U.S. Route 52 near Maher, in Mingo County. At the location of this incident, U.S. Route 52 is a two-lane, blacktop highway with a yellow center line and white lines on the edges. Ms. Chapman was on her way home approximately fourteen miles from the site of this incident. Ms. Chapman described the weather at the time of the incident as clear, but she stated that it had been storming and raining all week prior to the incident. According to Ms. Chapman, the road at this location is curvy and goes up and down numerous hills. She stated that she was traveling approximately forty-five miles per hour in a fifty-five mile per hour zone. Ms. Chapman was approaching a curve in the road when she suddenly saw the mudslide in her lane of travel. She was unable to maneuver into the southbound lane due to an oncoming coal truck and the vehicle was almost in the mudslide before she saw it. She drove the vehicle through the mud which caused her to lose control of the vehicle. The vehicle spun around at least twice before striking the hillside and coming to rest on the berm of the highway facing south. She described the impact as serious. The vehicle was significantly damaged but fortunately Ms. Chapman did not suffer any serious injuries. Ms. Chapman testified that she travels this road almost daily. She also testified that she traveled past the location of the mudslide in the southbound lane earlier in the day, but she did not observe a mudslide at that time. According to Ms. Chapman, the mudslide was approximately ten to twelve inches into the travel portion of the road and approximately eight feet in length.
Claimant James Chapman arrived on the scene approximately twenty minutes after the incident. He testified that the mud onU.S. Route 52 was approximately sixteen inches deep. Claimant also testified that the ditch line adjacent to the road was blocked off and water had backed up onto the road. He estimated that forty feet of the road was covered in a pool of water as a result of the ditch line being blocked. Claimant testified that he had driven past this location three days earlier and noticed that the ditch line was blocked and water was running across the road. However, he did not report the problem to respondent. Claimant submitted into evidence an estimate for the damage to the vehicle in the amount of$5,322.00. Claimant testified that the vehicle was “totaled”, and that to have it repaired by any auto body shop would cost more than the value of the vehicle. Therefore, he decided to pay a friend to make the repairs. Claimant testified that he has paid $3,500.00 for the repairs made to the vehicle at this time. Claimant seeks $5,322.00 in damages.
Claimant asserts respondent knew or should have known that there was a potential for a mudslide at this location and taken the proper precautions to prevent it or to at least place the proper warning signs for the traveling public.
Respondent contends that it had no notice of a potential for a mudslide at this location and that it reacted diligently and reasonably upon receiving notice of the mudslide under the circumstances existing at that time.
Cecil Collins, a Transportation Worker II and Craft Worker for respondent in Mingo County, testified that one of his responsibilities includes answering emergency phone calls after normal routine working hours. Fie is familiar with the portion of U.S. Route 52 at issue in this claim. He stated that the width of the road at this location is *7 between eighteen to twenty-two feet. He described the road at this location as having a dip which then goes back uphill. Further, he believes that there is a small curve just after the location of the mudslide. According to Mr. Collins, the weather conditions the week leading up to this incident beginning on May 2, 2002, were very stormy and rainy. He stated that during the night of May 2, 2002, the local area received heavy rains and the Tug River came out of its banks causing respondent to go into “red alert” in the southern region of the State. Mr. Collins stated that the drainage areas and other tributaries of the Tug River close to U.S. Route 52 near this location were in a flood stage. He also testified that at approximately 10:30 p.m. he received a telephone call while he was on duty and a female informed him that her daughter had been involved in an accident near Old Field Branch and that a vehicle had struck a large mudslide. Mr. Collins and another employee proceeded to the scene with a truck full of large barrels and traffic cones which they set up at and around the mudslide. Mr. Collins also stated that he later had flashing lights placed on the barrels to warn the traveling public. Further, he stated that upon the arrival at the scene he observed Ms. Chapman sitting in the vehicle which was located on the southbound berm. Respondent submitted into evidence a DOH-12 which Mr. Collins filled out on the night of this incident that reflects the actions taken by respondent on that evening. This document indicates that respondent went to the scene and secured it with barrels and flashing lights. Mr. Collins testified that he did not have any prior notice or complaints regarding any mudslide at this location and that he responded to this incident as quickly as possible after receiving the call. He estimates that it took him twenty to twenty-five minutes to get to the scene. Further, he testified that beginning on May 2,2002, respondent was responding to numerous mudslides all over Mingo County and that all of respondent’s remaining personnel were committed to the day shift. Further, he stated that he and a few other employees were on night shift and if they noticed or were called about a hazardous location then they would mark the area with hazard signs until the hazard could be safely resolved the following day.
It is a well established principle of law that the State is neither an insurer nor a guarantor of the safety of motorists on its roads and highways. Adkins v. Sims, 46 S.E.2d 81 (W.Va.1947). To hold respondent liable, claimant must establish by a preponderance of the evidence that the respondent had actual or constructive notice of the road defect in question and a reasonable amount of time to take corrective action. Chapman v. Dept. of Highways, 16 Ct. Cl. 103 (1986); Pritt v. Dept. of Highways, 16 Ct. Cl. 8 (1985).
In the present claim, the Court is of the opinion that claimant failed to establish by a preponderance of the evidence that respondent was negligent. The respondent was operating under a “red alert” or emergency circumstances due to the heavy rains and flooding at the time of this incident. Given this emergency and the fact that respondent did not have prior notice of the mudslide, the Court is of the opinion that respondent acted reasonably and diligently under the circumstances. While the Court is sympathetic to claimant’s loss, it is constrained by the law to deny this claim.
Therefore, in view of the foregoing, the Court is of the opinion to and does hereby deny this claim.
Claim disallowed.